This is Beal and Smith v. Sadler, Secretary of the Department of Human Services at all. This is number 4090812 for the appellant, Ms. Lace, and for the appellee, Ms. Wonder. You may proceed. May it please the court, counsel. The issue that this case presents to this court really deals with separation of powers and deals with whether there was legal authority for those departments and agencies under the jurisdiction of the governor to create an employment position that commonly became known as contractual employees. There is no authority in the Personnel Code nor in any rule adopted by the Joint Committee on the Administration Rules, which is made up of members of the legislature, nor by the Civil Service Commission. We submit there is no authority for the creation of these contractual employees and that the Personnel Code dictates that all offices and positions of employment in the service of the State of Illinois shall be subject to the provisions of this Act unless exempted in this Act or any other Act. There are no such exemptions. Since this was decided on a motion to dismiss, all facts in the complaint must be accepted as true. The complaint is very detailed. Plaintiff Beal began to work under a yearly contract at the Department of Human Services in February of 2000 and his contract was renewed in July of every year. Plaintiff Smith began to work under such a contract in September of 2001. After the complaint was filed, Mr. Beal was offered a position that clearly fell under the Personnel Code. He accepted that position. In July of 2008, the defendants decided not to renew Ms. Smith's annual contract as a contractual employee. The trial court dismissed all counts of the complaint on the basis of mootness because now Plaintiff Beal had a job that was officially under the Personnel Code and Ms. Smith had no job at all. We submit that allowing the defendants to create the doctrine of mootness flies in the face of the very doctrine of mootness. The contracts allow for expiration at the end of the year on July 1st or June 30th of every year, but they also allow the state defendants to terminate the contract at any time during the year for any reason. Mr. Beal and Ms. Smith were doing exactly the same work under exactly the same conditions as were employees under the Personnel Code. The only exception was they didn't have any of the benefits. They didn't have vacation days, sick days, retirement, or to Mr. Beal, most importantly, the ability to bid in on in-house promotions. Under any standard of the common law, these contractual employees were employees. They were not independent contractors. And in our brief and also in the decision of the State Labor Board, there is expansive discussion of what constitutes an employee as opposed to an independent contractor. So our first point is that there was no authority for the defendants to create and then use these positions. But the fact that they did, these people were, in fact, state employees. And we believe entitled to the benefits of state employment. Now, as I said, the trial court dismissed all counts on the basis of mootness. Originally, we had a three-count complaint. It then expanded and eventually became a six-count complaint. Counts one and two, which dealt with mandamus, declaratory judgment, and injunctive relief under state law, were dismissed out on the basis of mootness. The trial court then allowed us to re-plead the equal protection counts under the Illinois Constitution and under the Federal Constitution and to re-plead the due process count under both the state constitution and the federal constitution. The legislature created the Personnel Code. This case really deals with the power of the executive branch of government to create employment positions outside of that Personnel Code and outside of any legislative authority. It occurred to me the other day that in the last session of the legislature, a bill was passed to reduce benefits for employees who will start in 2011. The legislature enacted that. We believe that the legislature, if there were to be no benefits, the legislature had to enact that type as a statute. Now, as to the doctrine of mootness, there were certain exceptions to that doctrine. We believe that this case falls under all three exceptions and that the defendants really did not address these exceptions in their brief. The first is the public interest exception. This case involves an issue that is public in nature. There is a need for guidance for the future for state officials as to whether or not they can do this, and there is the likelihood of reoccurrence of these contractual employees. In the trial court, defense counsel estimated there were about 780 such contractual employees in the Department of Human Services alone. We believe those positions were established without any legislative authority. Why aren't they here? Where are those 780 potential litigants if this is somehow adverse to their interests? Why aren't they here? Why are you here instead? Well, Your Honor, my client sought to become a class representative of those employees, but we never got to that issue because of the dismissal outright. That explains why you're here. Why aren't they here? Your Honor, I have no idea. Well, it occurs to me that there's no shortage, as this court knows, there's no shortage of state employees who are willing to litigate if they think they're being shortchanged somehow in their rights. If there's 780 and there's one department alone who are being trampled upon by improper practices of state employment, I think a handful will find their way into the court system. They might have noticed that Gifty Smith's contract was terminated. I mean, under the contract that the 780 have, the state can terminate any time during that year and cannot renew at the end of the year. And that leads to the second exception to the mootness doctrine, which was capable of repetition, yet avoiding review. And we cited several cases in which the action is too short to litigate. The decision puts the control of the mootness doctrine in the hands of the defendants. So that any one of those other employees that wants to litigate this, they can terminate the contract and then argue it's moot because they no longer are in that contractual employee situation. The U.S. Supreme Court has termed that exception to the mootness doctrine as inherently transitory. That the cause of action is transitory and cannot be fully litigated while the person is in the same position. And as I said, we never got to the question of past certification because the court dismissed all counts on the basis of mootness. What we had asked was that given the fact that there is no legislative authority for the creation of these positions, that it is correct that either mandamus or injunctive relief issue. Now it's interesting that the personnel code creates numerous, numerous types of jobs. The first is exempt. And that is when you're exempt from the personnel code, truly exempt, you are subject to working at the will of the governor or the head of your department. There's the ability to hire people on an emergency basis. To hire people on a temporary basis. But temporaries are not to work for longer than six months in any calendar year. There's a provision for provisional employees, for probationary employees, for certified employees after they serve the probationary period, for trainees, and for four-year term appointments. Who can be appointed politically but are protected by the code during the four years and at the end of the four years there's no obligation to renew the appointment. Now that to me, that position created by the code, would be most analogous to this one-year appointment. And if the legislature deemed that it was appropriate, they should have enacted it, or the executive branch gone to the legislature and said, hey, we need this type of employee who works for one year on a one-year contract and is not entitled to any state benefits. But they didn't do that. And therefore I think this really raises the authority of the executive branch of government vis-a-vis the legislative branch of government. As I noted, these positions were never approved by the Joint Committee on Administrative Rules, nor by the Civil Service Commission. We raised constitutional rights under both the state and the federal constitution. Equal protection, because these employees were doing exactly the same work under exactly the same conditions as positions recognized by the personnel code. The defendants simply failed to follow the code or the rules that were adopted pursuant to that code. In other words, there's no rational basis for treating these people differently from the person who's sitting right next to them doing the very same thing, under the very same conditions, but without the full benefits. The defendants did not follow the law. And they're trying to use that to say, because we didn't follow the law in creating these positions, we don't have to follow the law as to the benefits of the position. And we think that's an irrational basis. They cannot use these people in that way. As to due process, again, they're doing exactly the same thing as the person that is sitting next to them, but they do not have the same benefits. There is no rational basis for treating these persons differently. In their brief, the defendants make mention of personal service contracts. That term is not found in the statutes. We think that the executive branch of government coined this phrase, contractual employees, and that that may not be used to circumvent the personnel code. For example, let's take it to the extreme. If every person who retires or leaves state government for one reason or another were replaced by contractual employees, and that's happening, that's a clear violation of the personnel code. Go to the legislature, ask the legislature to amend the code if they see fit to create this type of position. But don't use these people to do the same thing under the same conditions and then deprive them of the full benefits of the people who are doing the same thing, but just by chance have their position established under the code. We noted as to certain immunities the defendants claimed existed. Qualified immunity, we can find no case under Illinois law that establishes qualified immunity for a claim violation of Illinois constitutional rights. As to the federal claim of qualified immunity, that claim does not apply to injunctive relief. And furthermore, the claim of qualified immunity means there wasn't a case out there that said you should have known that what you were doing was wrong. But we note that the INA case, the State Labor Board case, which we attached to our complaint, was decided on March 1, 2005, and put these state defendants on notice that what they were doing was wrong. In that State Labor Board case, nurses who were working under these very same contractual arrangements, petitioned the State Labor Board and said, we are employees. And the State Labor Board agreed and ordered that they, because the position that was comparable to them, the same position, was under a collective bargaining agreement, that they then be put as employees in that collective bargaining agreement. That decision is well thought out. It's attached to our complaint. These two plaintiffs were merit comp employees at that time, and therefore could not go to the State Labor Board and say, hey, we're state employees, put us in the collective bargaining unit and treat us as such. They couldn't do that. So they did the only thing they could do, and that is come to court and challenge their very status as contractual employees. We also believe that these plaintiffs could not waive any of their rights, because you cannot waive something that you have the right to. You cannot, with the Lewis case, which was cited at length, said you can't raise, you can't waive rights that you have under a statute. So what we are asking is that... I'm not sure I understand that. What do you mean you can't waive them? This is a forfeiture situation anyway, not waiver, isn't it? Oh, the contract says that they waive any such rights. And we're saying they have these rights under the personnel code. And it was not, you know, knowing explicit waiver of any rights. But the Farmer case says you can't waive those rights. I'm just thinking about another situation under workers' comp. If you sign a release, you know, you're waiving all your rights, the world that you have against this employer. There's a lot of case law out there that says even though it's not mentioned, you can't waive a workers' compensation claim unless you actually do it in the appropriate form at the industrial commission. So you can't waive what is established as your right by statute. Well, but you can waive all kinds of constitutional rights, isn't there? This is a state policy that's particular to workers' compensation cases. It says the waiver won't apply if it's just in a contract. I don't think under this case law you can waive rights that you have. Particularly in the manner in which the contract, and quite frankly, we attach the contracts to the complaint. They read as though the state's contracting with General Motors. These people agree to, I think, obey the Clean Air Act and OSHA and all sorts of things. These contracts weren't designed for individuals who are working under the same circumstances and under the same conditions and doing the same thing. Quite frankly, this just plain, I think, got out of hand. We have had no discovery, but it is clear that under the facts that we have pled, these people are doing the very same things under the very same conditions. And as such, they have the right to have the very same benefits. And it also means that the legislature should have had a say in this. The executive branch can't run amok like this and create of its own will positions that don't fall under the personnel code. Thank you very much. Thank you. We believe that the dismissal of the complaint should be affirmed. And in support of the dismissal, I'd like to address three main points from the briefing. The mootness issue, to the extent that anything remains of plaintiff's claims that is not entirely moot. The claims fail to state a cause of action and so are properly dismissed for that reason. And additionally, the claims would be barred by immunities, most of the claims sovereign immunity and then in one case, qualified immunity. With respect to mootness, the claims are at least largely moot because there is no prospective relief available. Richard Beal applied for and received a position under the personnel code. He's not working as a contractor. Ms. Smith's contract expired. The plaintiffs include in their complaint a claim for retroactive relief on each of those counts. The mandamus injunction and the equal protection and due process claims. In each count, they ask for the full non-monetary benefits of state employment retroactively. It's not really clear to me what that means, what non-monetary would be, what retroactive relief they're seeking. But because there is this retroactive relief sought, it appears that the claims might not be moot in their entirety. However, if this court were to conclude, and I don't really know what is sought there, if the court were to conclude that this undeveloped request for retroactive relief would be moot, and that retroactive relief is not really adding anything here, and that these are basically prospective claims, then they are moot. And in that event, there are no exceptions to the mootness doctrine that would come into play here. It's clear from the cases the plaintiff cites that those exceptions are to be very narrowly construed. It's the proponent's burden to establish all the elements. And the overriding principle in this area is that courts require a live claim. They won't decide cases just to set precedent. So there are individual exceptions, individually based exceptions to the mootness doctrine, and then there's one class-based exception. None of those apply here. The class-based exception is called the inherently transitory exception. That comes up in the briefing in the Gerstein and Olson cases. And I think it's very clear from those cases that it's a very narrow exception. Gerstein involved pretrial detention. Olson involves temporary detention of an average of 139 days. So the elements of that claim is something that's very inherently transitory. Something that's intrinsically short-lived with the idea that it's unlikely that any individual claim would remain live long enough for class certification. The record here shows that for the only two plaintiffs there are, in the one case, Plaintiff Beal was a contractor for eight years. And with respect to Ms. Smith, she was a contractor for about six years and ten months. So that doesn't fit this very type of narrow, inherently transitory actions. There also must be a very known, clear, constant class. For example, in Olson there were 53 affidavits from other pretrial detainees. Yes, we're experiencing this deprivation, we're right here, we're ready to be part of the class. And I would suggest that simple allegations in a complaint that, oh, there are other people out there, that's not the same thing as a clear, known, established class. In this case, when the circuit court initially dismissed the claims as moot, the case remained pending for several months after the dismissal as moot. It was on November 12, 2008, and the final dismissal was in September of 2009. In all that time, there were never any other potential plaintiffs who stepped up to say, yes, we have a claim too. So I don't think we can presume there's this constant class. So there's no inherently transitory exception. The individually based exceptions, public interest doctrine, you need a question of substantial public interest. And yes, this involves public employment, but it still involves the state as an employer. It's the state exercising employment functions, and in that way it's not that different from the state acting as a private employer. It's not a question of the state regulating its citizenry. Another component of public interest, the public interest exception, is that the state is, excuse me, that the law is in some type of disarray, so that there's really a need for guidance. And I don't think, particularly given that these are narrow exceptions, I don't believe that this qualifies. There's no split in the circuits, no particular disarray in the law. Capable of repetition, yet evading review. One aspect is that you need a reasonable likelihood that the same person will experience the same action. The same person will experience the same action, and I don't believe we have that here. It's not reasonably likely that either of these pledges will work as a contractor again. The evading review sort of mirrors the inherently transitory exception for class-based claims in the sense that it is something that is intrinsically short-lived, which the record doesn't support in this case. There's also mention of a collateral consequences exception. That doesn't even come into play here because it has to do with certain court orders where the effect of the order has expired, but it might have a collateral consequence, the classic example being a conviction order where the sentence has been served. There's nothing like that that's even an issue. Plaintiffs raise the suggestion, well, the defendants shouldn't be able to control mootness. There are a couple of responses to that. They still have to fall within a mootness exception. That's not an alternative. They still have to meet one of these exceptions. Also, I'd say that there's no suggestion on this record that anything is happening here that's some type of improper actions for the purpose of creating mootness. In particular, with respect to Plaintiff Beall, any suggestion that this was improper I think is the equivalent of saying that he really wasn't qualified for the job that he applied for and received. I think mootness here has to be used just as much within the control of plaintiffs as the defendants because any particular plaintiff can choose to not work for the state anymore or a variety of other things could happen. If the court views the claims as moot in their entirety, that whatever this retroactive relief is, it isn't adding anything, then there are no exceptions. That being the state of mootness, if there's anything left, then the claims fail the stated cause of action. Each claim has its specific elements. I'll go through the various claims, but in each case, in different ways, the deficiencies come back to the fact that employees under the personnel code go through extensive hiring procedures that the plaintiffs were able to forego. And those hiring procedures include open competitive testing that results in eligibility list ranking and there are also significant veterans' preferences. In fact, veterans have, this is in the Denton case, veterans have an absolute preference within a particular ranking group. So with that background, the mandamus claim, we believe there are a couple of defects. The initial premise that the plaintiffs have is that the department lacks authority under the precedent... Let me ask this question. I kind of had it at the heart of this lady's argument. Bottom line is, the executive branch of government is doing something that shouldn't be permitted to do. Her reference to the Clean Air Act and all the rest of this, this is obviously these are contracts that are designed to deal with major suppliers of some sort, where people are going to be involved, as opposed to hundreds of state employees that are just being overlooked and denied benefits and all the rest of this. This is kind of an overarching view. What about that? Is she right? And if she isn't right, why not? Well, I think there's two steps here. We don't think that she's right, but assuming for the sake of argument that that was the case, it doesn't get them where they need to be for a mandamus claim. And if I might explain, what you're asking about is the notion that the department lacks the authority under the personnel code to enter into these contracts. And we don't agree because there are numerous statutes that contain references to contractual employees, and that's cited in my brief, that use similar language. And it doesn't follow logically, and this is not something that's unknown to the legislature, it doesn't follow logically that the legislature is recognizing the use of contractors and other statutes, but at the same time somehow meaning to prohibit that in the personnel code. So we don't think that there's a clear showing that this is in any way unauthorized. But we don't think that that's really, that the court needs to definitively address that issue or that that's, we can't just stop there. Because even if we assume that the department lacks authority to enter into this type of contract, the plaintiffs don't have a mandamus claim because it isn't a claim to say, oh, stop this unauthorized use. What they're asking for is to be affirmatively converted into state employees under the personnel code. So that's the injunctive claims? Yes, that's mostly what they're asking for. And there's no, you know, there's this clear right, this non-discretionary duty, and there's no non-discretionary What about the other claims? We're here on the dismissal of injunctive claims, aren't we? The injunctive claims fail for the same reason, that there's no clear right to somehow be converted into employees under the personnel code when they never went through the extensive hiring procedures of the personnel code. This is actually seeking to require the state to hire particular persons or, you know, create and fill particular positions, and those are I understand Ms. Lee's argument, though, it's not, we're not requiring the state to hire people. To convert them into It's a question of converting them to full-fledged employees as opposed to this contractual service standard that no one held a gun to the state employer's head to say you have to hire X and Y, but if you're going to hire X and Y, then you have to give them the benefits they're due under the employment code. I think that's essentially your argument. I think it's under the personnel code that shows that they do not have a mandamus claim here, because the personnel code Well, if she's right, what is their claim? Let's just think about for the moment, let's assume she's right that you can't just willy-nilly hire contractual people, you've got to put them on the personnel code, and they haven't done so, then what what's their recourse? I think that there is potentially recourse, if this were an unauthorized practice, to enjoin the use of an unauthorized practice. I don't think either of these plaintiffs have standing for that, because neither one is currently working as a contractor. But there's two steps here. It's not, and I think that's what's important, it's not to enjoin an unauthorized practice, although we don't agree that there's no authorization for the practice. It's affirmatively convert us into employees under the personnel code, and that's something quite different, because that is directing that's not just a ministerial function, that involves all kinds of discretionary functions about directing the state, who shall be made into an employee under the personnel code. Let me ask you this way, counsel. If we were to reject this case before us, is there any limitation you see on the executive branch of state government essentially abandoning the personnel code entirely in its future hiring, saying everyone's a contractual employee? What would be their limitation upon doing that? I actually don't believe that there is a limitation. Well, given that the state's broke, and this would be one way of saving lots of money, is this where we're going? I don't believe that there is a statutory prohibition in the personnel code. I would say, as a practical matter, that's a really unrealistic scenario, given lots of other constraints. We haven't reached the point of a few thousand employees? Well, given the state's relationship with several unions, it's just nothing that would ever happen as a practical matter. But your position is that there is no statutory prohibition. That is our position, yes. But I'm also saying that there's two steps here. This is unauthorized, and then these plaintiffs have specific claims for a specific type of relief, and they have to fit those elements. So even if we assume it's an unauthorized practice, they don't get where they need to be to state a mandamus claim or an injunctive relief claim because, at that point, there's a difference between saying, okay, don't do this unauthorized practice, which isn't the relief they want. They want this affirmative conversion into personnel code employees  Now, I'm no expert on labor law, but it appears to me that there would be no violation of any labor agreements because, by definition, these people aren't employees of the state, and they're not covered by any labor agreements for state employees, are they? I don't believe they're covered by any labor agreements, no. So AFSCME wouldn't have a complaint about, this is not an unfair employment practice, is it? Oh, they'd find a way to complain about this. Well, they might find a way, but your sense is, yeah, you're not in this by definition, it covers employees, and you're not one to get out of town. That's essentially what would be the response. I'm not sure I understand what your question is. That AFSCME doesn't cover the terms of employment for contractual service employees, and there's no any labor contracts aren't being violated by the state because these people aren't covered. Well, it is the case that these plaintiffs are not union members. Well, if they joined the union, it wouldn't matter because they're not covered under this, they're not employees. Maybe AFSCME would let anyone join the union just to show solidarity, who knows? But that would be the state's position, I think. The state's position is that there is no statutory prohibition on the use of contractors. So in order to achieve what Ms. Leahy thinks is the goal of not letting the state hire everybody as a contractual service employee, it's your position that the statutes would have to be changed in some fashion to regulate this practice or prohibit it? No, I'm saying there is a distinction between an action to direct the cessation of an allegedly unauthorized practice and what's being sought here, which isn't simply that, but an affirmative remedy of being converted into employees under the Personnel Code when they have never gone through these extensive hiring procedures. I don't think that the former gets them to the latter, which is where they need to be for their mandamus and injunctive claims. You mean the hiring procedures under the Civil Service Code? Is that what you're talking about? Under the Personnel Code, they never went through the open competitive testing, the eligibility lists, they weren't subject to the veterans' preferences, and while there's an effort to say, well, that's just the defendants not following their own procedures, I don't think that that can be fairly evaluated in that light because these plaintiffs were also able to forego those procedures and receive the benefit of that. So what they're saying is even though we never went through these extensive hiring procedures, we're entitled to receive all of the benefits of employees under the Personnel Code. When it's entirely speculative, we can't conclude that these employees ever would have had a job under the Personnel Code. So if we wanted to look at this in a worst case scenario, we wanted to imagine, now such a thing is hard to imagine in the state of Illinois, but a totally corrupt executive branch that said, I want to hire hundreds of people into these various positions based upon entirely the extent of service they have provided to my political efforts and to my political friends. Leaving aside any efforts at the moment, how that might be litigated there, but there would be nothing in the state Personnel Code that would stop them from doing so. You just hire, because they're contractual people and there are no limitations upon what they do. Is that right? I believe that there is not a prohibition in the Personnel Code. I think there are a lot of practical prohibitions and I think that the union's efforts to say, hey, you can't give this type of work to other people when it should be given to us is all part of it. But again, I think there are these two steps. In joining a practice that's allegedly unauthorized, that might be, we can stop the practice, but it still doesn't get them, yes, we have a mandamus claim, it doesn't get them an equal protection claim or due process claim because they didn't go through these procedures and they are not similarly situated and they do not have a property interest under the due process clause. So there's a couple of steps in the analysis. I see that I'm out of time. Thank you. This wonder indicated that there was no prohibition in the Personnel Code as to these employment positions. And Section 41.5-4 says, all offices and position of employment in the service of the State of Illinois shall be subject to the provisions of this Act unless exempted in this or any other Act. And there's no exemption. How are contractual service employees then ever hired? How are they ever hired? Yes. Total bypass, total creation, go out seek somebody. Well, I'm saying though, how is it lawful for the State ever to hire a contractual service employee? It's our position it is not. So they can't ever do it? That's correct. Including GM or anybody else or just you come in and fix our windows, you can't hire anybody to do that? Your Honor, that's an independent contractor, not an employee. And there's the exception of contracting for all sorts of services except for such things as attorneys and expert kind of advisors. But otherwise, that's handled. And in the trial court the State admitted these positions didn't fall under the Procurement Code. So we're saying they're not independent contractors. They've got to fall under the Personnel Code. And this creation by the Executive Branch of Government is just plain illegal. And Your Honor, the State Labor Relations Act would not cover them because the State would maintain they're not employees. I'm so glad that counsel brought up the Veteran's Preference because these contractual employees allow the Executive Branch not only to get around the Personnel Code but to get around the Veteran's Preference. We had long discussions with Judge Kelly that are not of record about relief. And we never really got to what would be the appropriate relief. We believe the appropriate relief would be to declare these practices illegal, to enjoin the Executive Branch from creating and filling contractual employees, and then to look at these employees and say, hey, wait a minute, the State took advantage of you. You worked under the same conditions, doing the same job, but didn't get the equal benefits and you should have the right to that. But we really didn't get to the relief issue. But if this is illegal and there's no authority for it, not by the Civil Service Commission, by JCAR, by the statute, it's got to be prohibited. And what it has enabled the State to do is bypass, alluded to it, Rutan wouldn't apply because they're not employees. Veteran's Preference wouldn't apply because they're not employees. Personnel Code wouldn't apply because they're not employees. And it opens up to just what you said. The Executive Branch would be free to hire anyone they wanted to hire really under any conditions, but just don't give them the benefits. I was just thinking hypothetically about corruption in the State government. Yes, Your Honor, I realize that and we haven't had discovery as to exactly what happened with these positions under various administrations. Where is ESME, by the way, in all of this litigation? They have not taken a position on this litigation. But the Illinois Nurses Association, which is a labor union, brought that case before the State Labor Board. Now ESME would not have had any jurisdiction over these two plaintiffs because at that time they were merit comp employees and not subject to the collective bargaining agreement. Perhaps today they would be and that would create a totally different situation because I believe that the expansion of collective bargaining employees has been great over the last three years. In any event, Your Honor, this truly is a case about a serious case about the separation of powers. Let the governor, let the departments under the jurisdiction of the governor go to the legislature if they want permission to do this and get it if the legislature, the representatives of the people, think that that's appropriate. Thank you. Thank you.